# No. 13,446.

## Hertz Drive-Ur-Self System et al. *v.* Doak.

(29 P. [2d] 625)

Decided January 22, 1934.

Messrs. HINDRY, FRIEDMAN & BREWSTER, for plaintiffs. in error.

Mr. MAX P. ZALL, for defendant in error.

*In Department.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

ARTHUR Doak brought mandamus against Hertz Drive-Ur-Self System, Inc., of Colorado, a corporation, L. K. Brown and Jean F. Brown to compel the transfer to plaintiff of 625 shares of the capital stock of the above corporation. Respondents prosecute error to review a judgment in favor of Doak, the petitioner, and apply for a supersedeas.

L. K. Brown was president and Jean F. Brown secretary of the company. Doak pleaded facts showing his ownership of the stock, his possession of the certificates therefor, endorsed and assigned to him, and the refusal of the corporate officers to transfer the stock on the books of the company. The respondents answered, pleading fraud. They alleged, inter alia, that L. K. Brown had pledged the stock to one Brunton to secure Brown's promissory note, and that notwithstanding the note had been extended, Brunton procured a fictitious sale of the stock on a pretended default, and that Doak pretended to buy it, but that it was a "pretended, feigned and fictitious sale," without consideration, and that L. K. Brown is the lawful owner of the stock and Doak has no interest therein. Doak admits he bought the stock at the foreclosure sale of such collateral, but denies other allegations of respondents, and maintains that his purchase of the stock was in all respects regular. The answer attempted to raise an issue as to the regularity and validity of the foreclosure sale of the corporate stock, through

which Doak claims ownership and the right to the transfer thereof on the books of the company.

At the trial, Doak proved all essential facts as alleged in his petition, which entitled him to recover, but the respondents offered no proof of any kind in support of their answer to the alternative writ. Their omission in this respect was not an oversight; they took the position, and urge it here, that no such proof was required, since their answer discloses that the ownership of the stocks is in dispute, and the title thereto cannot be litigated in a mandamus proceeding. In other words, it seems to be the belief of respondents that regardless of the merits of the petition and the proof offered to support it, respondents can oust the jurisdiction of the court by simply raising an issue of ownership, which must not be tried here, and that this unsupported plea, regardless of its truth or falsity, is conclusive upon the court in this action. Respondents' theory is emphasized by the following colloquy between the trial court and their counsel:

"The Court: Then if a party who has shares of stock endorsed over to him promptly presents them to the Company and asks for a transfer, and upon being refused brings a mandamus proceeding, the defendant, whoever he is, could, by simply putting in issue the ownership, oust the court of jurisdiction?

"Mr. Brewster: Absolutely."

The trial court properly disapproved of respondents' conception of the law as applied to this case.

1. As to ownership, the petitioner established his title by compliance with subdivision (a), section 1, chapter 81, page 265, Session Laws 1927, as follows:

"Title to a certificate and to the shares represented thereby can be transferred only,

"(a) By delivery of the certificate indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or

"(b) By delivery of the certificate and a separate

document containing a written assignment of the certificate or a power of attorney to sell, assign, or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person.''

█ 2. The duty of corporate officers to issue stock certificates to those entitled thereto is a ministerial duty, enforceable by mandamus. *Capitol Petroleum Co. v. Haldeman,* 68 Colo. 265, 180 Pac. 758. The remedy is authorized by section 342, et seq., of the 1921 Code, and its use in a proper case to compel the issuance of stock certificates is also recognized in *Sturner v. McCandless Investment Co.,* 87 Colo. 23, 25, 284 Pac. 778. The inadequacy of an action at law by a stockholder for damages, and also the futility of equitable remedies, as well as the necessity for the prompt transfer of corporate stock to those who are lawfully entitled thereto, is stressed in *Capitol Petroleum Co. v. Haldeman, supra.* In the opinion we cite *Dennett v. Acme Mfg. Co.,* 106 Me. 476, where Thompson on Corporations is quoted with approval, and we repeat the endorsement. One reason assigned by the author is the importance and value of the right to vote corporate stock, but if it be not transferred to the rightful owner, '' '* * * the officers of the corporation may remain in power and possession of its assets, repudiate his rights and tortiously perpetuate their official existence, and his only legal remedy for this great wrong is to have the assets of the corporation mulcted and other innocent stockholders perhaps damaged, to the extent of the market value of his shares thus converted.' '' The quotation continues on page 270 of the 66th Colorado Reports:

'' 'The same reasons and objections, we think, may be urged against the suggestion that the petitioner has an adequate remedy in equity. Before that remedy could be prosecuted to a final decree important opportunities to

enhance the value of the business of the corporation may have passed, and maladministration have wasted and dissipated its assets. Such a remedy is not commensurate with the petitioner's rights. He is entitled to the privilege of a stockholder at once, that he may immediately share in the assets of the corporation and have a part in its affairs. A remedy that can at most afford him his rights as a stockholder only at some future time, is * * * not an adequate remedy.' ''

3. In the instant case, the respondents pray that the action in mandamus be dismissed, but the record fails to show that they have instituted any proceedings to rescind the sale of the stock to Doak or reclaim it for alleged fraud or for any other reason, as provided in chapter 81, Laws 1927, or that they have any intention of ever doing so. Brown is content to remain in office as president of the company indefinitely in control of its affairs, and meanwhile to silence the petitioner, if he can, with mere verbal allegations of fraud and trickery, but he and the other respondents apparently recoil at the prospect of having their charges sifted in court. They would place the burden on petitioner to bring an action to establish the latter's innocence, when the presumption of innocence is in favor of petitioner in the first place. Respondents must bear their own burdens.

4. Mandamus is a discretionary writ (*People v. Buckland*, 84 Colo. 240, 269 Pac. 15; *Dines v. Harris*, 88 Colo. 22, 34, 291 Pac. 1024), and the order is reviewable for abuse of discretion, but there was no such abuse in the granting of the present writ.

We held in *Sturner v. McCandless Investment Co. supra*, and *Bargler v. Farmers Irrigation Co.*, 87 Colo. 605, 290 Pac. 288, that no one is entitled to the writ whose right is not clear and unquestionable and that it is not an appropriate remedy when it is apparent that the interests of third persons, who are not before the court, are involved, but we have never held that mandamus is not a proper remedy to procure the transfer of corporate

stock when the facts justify it. We think petitioner's right is clear and unquestionable and it is not apparent that the right of any third person is involved. Respondents endeavor to make it appear that Brunton, the pledgee of the stock, is interested, but it is evident that he is not. Respondents themselves allege in their answer that Brunton parted with the stock, and the original certificates indorsed and transferred to Doak, received in evidence, show this to be the fact. Respondents' answer under oath also alleges that no consideration was paid for the stock, but a certified bank check for the sum of $1,000 from Doak to Brunton, paid and properly identified, discredits the answer. The respondent Brown, forced into court for cross examination under the statute, aided petitioner's testimony in essential particulars, but offered no defense. Respondents objected to petitioner's evidence as a whole, and refused to submit any themselves.

5. The court remarked that the answer did not appear to have been made in good faith. In effect it was treated as a sham answer, and justly so. The record disclosing respondents' inconsistencies and self-contradictions cannot be scanned without gaining the impression that the answer was contrived only for purposes of delay. We must hold that a sham answer cannot operate as a stalemate to check the petitioner in his rightful demand for the transfer of stock to which he is entitled on the books of the corporation.

Judgment affirmed.

MR. JUSTICE BURKE and MR. JUSTICE HOLLAND concur.